In re Martin Wayne HARTMAN and Susan Louise Hartman, Debtors.

UNITED STATES of America, Plaintiff,

v.

Martin Wayne HARTMAN and Susan Louise Hartman, Defendants.

Bankruptcy No. 94–50157.
Adv. No. 94–5027.

United States Bankruptcy Court,
W.D. Missouri.

April 7, 1995.

AMENDED ORDER DENYING
DEBTORS' DISCHARGE

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff, the United States of America, on behalf of its agency, the United States Department of Agriculture, Rural Economic and Community Development Agency, formerly known as Farmers Home Administration, (the "RECD") filed an adversary action in debtors' Chapter 7 bankruptcy case objecting to debtors' discharge and objecting to the dischargeability of its debt. Following a hearing on February 16, 1995, this Court denied the discharge as to both debtors pursuant to 11 U.S.C. § 727(a)(5) and 727(a)(3). Having denied the discharge I find that the remaining Counts in plaintiff's Complaint are now moot.

A brief recitation of the facts is in order. RECD is a creditor in this bankruptcy case. At the time of the petition, RECD's claim totalled $165,463.97. Between May 1, 1985, and June 22, 1990, debtors signed a series of promissory notes with RECD.[1] Debtors also granted RECD security interests in all crops, growing and grown, livestock and the proceeds thereof, other farm products, farm and other equipment, supplies, accounts, and contract rights as security for the various loans. Pl.Exh. # 3. Debtor Wayne Hartman prepared seven hand-written financial statements for RECD between November 8, 1984, and October 22, 1993. Pl.Exh. # 69(x). On each occasion Mr. Hartman indicated livestock with a value in excess of $128,000, and machinery, equipment, and vehicles with a value in excess of $50,000.00. *Id.* On April 11, 1994, debtors filed their bankruptcy petition. Their bankruptcy schedules, which they signed on that date, do not list all of the above-stated collateral. There were no cattle

Judith M. Strong, Kansas City, MO, for plaintiff.

Alden Lance, Savannah, MO, for defendant.

---

1. Debtors executed the following loans:

|   | | | |
|---|---|---|---|
| 1. | Emergency Loan | May 1, 1985, | $27,780.00 |
| 2. | Operating Loan | May 1, 1985, | 50,170.00 |
| 3. | Emergency Loan | April 21, 1986, | 27,408.33 |
| 4. | Operating Loan | April 29, 1986, | 98,500.00 |
| 5. | Emergency Loan | January 15, 1987, | 28,418.31 |
| 6. | Operating Loan | January 15, 1987, | 129,712.46 |
| 7. | Operating Loan | June 24, 1988, | 138,108.23 |
| 8. | Emergency Loan | June 22, 1990, | 27,018.12 |
| 9. | Operating Loan | June 22, 1990, | 133,809.88 |

or crops on debtors' farm on May 12, 1994, when a representative of RECD visited the farm.

Susan Hartman testified that she has worked for the United States Department of Agriculture for twelve years. She is a program assistant who processes commodity loans and verifies collateral stored in warehouse co-operatives. She also records financing statements in the appropriate recorder-of-deeds' offices. She testified that she was not present when Wayne Hartman filled out the financial statements for RECD, however, with only one exception, she signed them without review. She also admitted that there were no books or records available to accurately explain what happened to RECD's collateral.

Mrs. Hartman also testified that she signed bankruptcy schedules indicating debtors had no cash on hand when bank statements from Nodaway Valley Bank indicated a balance in debtors' joint checking account of $742.67 and a balance in Susan Hartman's personal account of $1,586.02 on the date of the bankruptcy filing. Pl.'s Exh. ## 33 and 34. Mrs. Hartman further admitted that the bankruptcy schedules failed to list two lawsuits which had been filed against debtors.[2]

Kelly Price, who lives in debtor's former home, testified that he visited the farm in January and February of 1994 and estimated the corn bin contained at least 2100 bushels of corn. When he took possession of the property on March 4, 1994, the corn bin was empty.

Wayne Hartman testified that the financial statements he submitted to RECD on October 12, 1989, April 12, 1989, January 26, 1990, February 28, 1992, and October 22, 1993, were all inaccurate. He also admitted that Greg Hartman, debtors' son, sold some of the cattle at his direction.[3] He further stated that he owned no cattle at the time of the bankruptcy filing because he had sold his last head of cattle in 1993. He also stated he had bartered no cattle within the past year. However, debtor said he kept no books or records of his farming operation.

David Deshon, the President of Farmer's State Bank, testified that Billy L. Hewitt, Chairman of the bank's Board of Directors last visited debtors' farm on July 7, 1993. At that time the livestock was substantially the same as listed on the security agreement debtors had signed with Farmer's State Bank on March 2, 1992. Pl.'s Exh. # 69(1).

Finally, Gary Baumann, RECD's county supervisor for Nodaway County, Missouri testified that he visited debtors' farm on December 3, 1993. He stated he and Wayne Hartman visited three different pastures, where he was shown cattle which Mr. Hartman represented to be his own cattle. Mr. Baumann also offered unchallenged testimony that he has driven past Susan Hartman's stepmother's pasture since the filing of the bankruptcy petition and has seen a herd of cattle similar to the herd previously represented to be debtors' herd. He also stated that debtors' herd of Shorthorns are relatively rare in this area.

■ Bankruptcy relief is an equitable doctrine and bankruptcy courts are courts of equity. *In re Global Western Development Corp.*, 759 F.2d 724, 727 (9th Cir.1985). As such, the relief afforded by a discharge of debts enables the *honest debtor* to make a "fresh start." The emphasis here is on the honesty of the debtor. It only takes a showing that a debtor intended to defraud one creditor in order for the Court to deny the discharge. *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986).

■ The standard of proof in 11 U.S.C. § 523 dischargeability proceedings is a preponderance of evidence standard. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112

---

**2.** David Palmer Seeds filed a lawsuit against Wayne and Susan Hartman on June 29, 1993. The case was dismissed on March 14, 1994, when debtors settled with Mr. Palmer. Pl.Exh. # 69BB. MFA, Inc. filed a lawsuit against debtors on August 23, 1993. The case was dismissed on September 16, 1993. Pl.Exh. # 69AA.

**3.** Greg Hartman testified he sold cattle belonging to his parents, but listed himself as the owner.

L.Ed.2d 755 (1991). The same is true in a proceeding under 11 U.S.C. § 727. *See Cullen Center Bank & Trust v. Lightfoot (In re Lightfoot),* 152 B.R. 141, 146 (Bankr. S.D.Tex., 1993) *citing First National Bank v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir.1991); *In re Cook,* 126 B.R. 261, 265 (Bankr.E.D.Tex.1991).

■■■ RECD claims that debtors' discharge should be denied because they failed to keep adequate records of the farming operation, and they have failed to satisfactorily explain the whereabouts of RECD's collateral or the proceeds thereof. Section 727 of the Bankruptcy Code (the "Code") provides in relevant part:

(a) The court shall grant the debtor a discharge, unless—

.    .    .    .    .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

.    .    .    .    .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a). A bankruptcy court and creditors are dependent upon the accuracy of a debtors' records in order to evaluate transactions. A prerequisite to the granting of a discharge is that debtors keep and preserve books adequate enough to enable the Court to ascertain the debtor's financial history and record. *In re Kottwitz,* 42 B.R. 566, 569 (Bankr.W.D.Mo.1984). Debtors here freely admit that they kept no books or records of their farming operations. This Court cannot ascertain the financial condition of these debtors, and they offered no justification for this failure. As a result of the absence of any records, Mrs. Hartman admitted she inaccurately represented debtors' cash assets at the time of the bankruptcy filing. Mr.

Hartman admitted filling out inaccurate financial statements on five different occasions. I must, therefore, deny debtors' discharge for their unjustified failure to keep accurate records of their farming activities.

■■■ RECD also contends that debtor's discharge should be denied pursuant to section 727(a)(5) because of their failure to satisfactorily explain any loss or deficiency of assets. Once the plaintiff demonstrates a loss of assets, the burden of proof shifts to the debtor to explain the loss. *In re Ransom,* 75 B.R. 684, 686 (Bankr.E.D.Mo.1987). If the debtor's explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. *Id.* Debtor must also "explain his losses or deficiencies in such a manner as to convince the Court of good faith and businesslike conduct." *Miami National Bank v. Hacker (In re Hacker),* 90 B.R. 994, 996 (Bankr.W.D.Mo.1987). An explanation based on an estimate of the debtor, with nothing offered in the way of verification or affirmation by means of books, records or otherwise is unsatisfactory. *Hacker,* at 997. Any loss of assets is sufficient to deny a discharge if the explanation for such loss is unsatisfactory. *Id. Hacker,* goes on to state that the intention of the debtor is irrelevant, as is the credibility of the debtor, if the explanation is unsupported by sufficient documentation. *Id.* at 1001–1002. Mr. Hartman stated he sold the last of RECD's collateral in 1993. However, Mr. Baumann testified that he made a farm visit on December 3, 1993, and Mr. Hartman showed him a herd of cattle pastured in three different pastures and represented that such cattle was RECD's collateral. In light of that testimony, Debtors offered absolutely no explanation as to the loss of assets. I find that the failure of offer any explanation is sufficient to deny debtors' discharge pursuant to 11 U.S.C. 727(a)(5).

Based upon all of the above, debtors' discharge is denied.

IT IS SO ORDERED.