In re Leonard L. SWORD and Patricia J. Sword, Debtors.

James R. JESSELL, Trustee, Plaintiff,

v.

Leonard L. SWORD and Patricia J. Sword, Defendants.

Bankruptcy No. 87–3854–9P7.
Adv. No. 88–47.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 28, 1988.

**758**

James R. Jessell, Fort Myers, Fla., for plaintiff.

Alfred E. Johnson, Fort Myers, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration is a Complaint objecting to the Debtors' discharge pursuant to § 727(a)(2) and (a)(5) of the Bankruptcy Code. In Count I of the two-count Complaint James R. Jessell (Trustee) seeks a determination that Leonard L. Sword and Patricia J. Sword's (Debtors) discharge should be denied as they have concealed the transfer of property of the estate, specifically, a boat, within one year before the date of the filing of the Petition with the intent to hinder, delay or defraud creditors. In the alternative, in Count II the Trustee seeks a determination that the Debtors' discharge should be denied based upon their failure to satisfactorily explain the loss of assets to meet their liabilities.

The facts relevant and germane to a resolution of claims under consideration, as established at the final evidentiary hearing, are as follows:

In February of 1986, the Debtors purchased a Sea Sprite boat, and on February 18, 1986, the State of Florida issued a vessel registration certificate in the name of the Debtors. In May of 1986, the Debtors apparently agreed to sell the boat to one Mr. Robert Luddy. On August 5, 1986, the Debtors received two checks in the total amount of $11,000.00 which appear to be the purchase price of the boat paid by Mr. Luddy. (Plaintiff's Exh. No. 4) On September 16, 1986, the State of Florida issued a vessel registration certificate in the name of Robert Luddy. (Plaintiff's Exh. No. 3)

On July 17, 1987, the Debtors filed their voluntary Petition under Chapter 7 of the Bankruptcy Code. It is undisputed that the Debtors failed to disclose the sale of the boat on their Statement of Financial Affairs. The Debtors have explained this omission by stating that although the sale in fact actually occurred in May of 1986, over one year before the filing of the Petition, they did not receive the proceeds from the sale until August. It is the Debtors' explanation that the proceeds from this sale were used for living expenses.

In addition to receiving the proceeds from the sale of the boat, the Debtors also received $4,000.00 from the sale of a van in September of 1986, and $3,500.00 from the sale of a 1955 Chrysler automobile in March of 1987. The proceeds from both sales were used, according to their explanation, for living expenses, with the exception of $2,100.00 obtained from the sale of the Chrysler which was used for the purchase of a spa.

At the time relevant, the Debtors also withdrew large sums of cash from several bank accounts maintained by them. Specifically, on May 12, 1986, the Debtors withdrew $41,000.00 from their Dean Witter account (Plaintiff's Exh. No. 5). Of this amount, $32,000.00 was deposited into the Debtors' checking account at Barnett Bank. The remainder of $9,000.00 was retained in cash by the Debtors. (Plaintiff's Exh. No. 6) In addition, from May 15, 1986 through May 27, 1986, the Debtors withdrew the previously deposited $32,000.00 by writing several checks on the Barnett Bank account made payable either to cash or Mrs. Sword. (Plaintiff's Exh. No. 7) These funds, according to the Debtors, were used for a trip throughout the United States which spanned ten weeks. The Debtors failed to furnish any documentary evidence such as hotel bills, restaurant bills, gasoline bills, or other receipts to prove the expenses of this trip, and the only documentation of the trip is a list prepared by Mrs. Sword which indicates that the trip cost approximately $200.00 per day which included $80.00 a day for gas driving a 1985 pick-up truck and $120.00 a

day for food and lodging. (Plaintiff's Exh. No. 8). Based on Mrs. Sword's calculations, the ten-week vacation cost approximately $14,000.00, leaving a balance of $27,000.00. It should be noted that the Debtors' contention that their reason for taking $41,000.00 in cash on their trip, carrying same in a pick-up truck hoping that they might run across a business they could buy is expressly rejected as absurd and defies credibility.

It further appears that from October 4, 1986, through January 21, 1987, Mrs. Sword wrote checks to herself as payee from the Debtors' banking account at First Florida Bank in the total amount of $7,609.00. (Plaintiff's Exh. Nos. 10, 11, 12, 13 and 14) Again, according to the Debtors, these funds were used for living expenses with the exception of $1,600.00 which was used for paying for tuition in a truck-driving school for Mr. Sword (Debtor's Exh. No. 4). During the time relevant, Mrs. Sword also wrote numerous checks totalling $1,630.00 for household expenses.

The only evidence produced by the Debtors at the hearing to explain the disposition of the proceeds from the sale of the boat and two cars and the additional funds at their disposal consists of 1) a bill dated May 3, 1987, from Performance Exhaust, Inc., in the amount of $1,999.24; 2) a second bill from Performance Exhaust, Inc., dated May 20, 1987, in the amount of $11,270.35 and 3) various receipts relating mainly to the Debtors' trucking business totaling $5,672.97. It should also be noted that Mr. Sword had no regular income from January of 1986 to January of 1987, but that Mr. Sword earned $24,275.00 from January 1987 through May 1987. During the time relevant, the Debtors had two children, ages 10 and 20, respectively.

Based on the foregoing, it is the contention of the Trustee that the Debtors' discharge should be denied pursuant to § 727(a)(2)(A) and, in the alternative, pursuant to (a)(5) which provide in pertinent part as follows:

§ 727. DISCHARGE

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutiliated, or concealed, or has permitted to be transferred, removed, destroyed, mutiliated, or concealed—

(A) property of the debtor within one year before the date of the filing of the petition ...

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .

Considering first the claim set forth in Count I of the Complaint based on the sale of the Sea Sprite, this Court is satisfied that the Trustee has failed to meet his burden of proving that the Debtors concealed property and acted with the requisite intent to hinder, delay or defraud creditors by not recording the transfer of the boat on their Statement of Financial Affairs. For this reason, the claim of the Trustee based on § 727(a)(2) set forth in Count I cannot be sustained.

However, the claim set forth in Count II of the Complaint is a different story and this Court is satisfied that based on the evidence, the Debtors' discharge should be denied for the following reasons:

First, it cannot be gainsaid that the ultimate burden of persuasion rests with the Debtors when their right to a discharge is challenged under § 727(a)(5). Thus, once the objecting party establishes that the Debtors had a legal or equitable interest in a property of some substance not too far removed in time the burden is on the Debtors to explain to the satisfaction of the Court the loss of the particular assets. *See In re Chalik*, 748 F.2d 616 (11th Cir.1984). According to the standard of proof required, a vague and indefinite explanation of losses of assets that are based upon estimates uncorroborated by documentation are generally unsatisfactory. *Id.*

Considering the evidence presented in light of these principles, this Court is satis-

fied that the Debtors have failed to satisfactorily explain the loss of their assets. Even accepting the Debtors' accounting of the disposition of $36,642.56, which is supported by scant documentation, the Debtors have failed to satisfactorily explain the loss of the balance of $54,741.44, which sums were at their disposal during the fourteen-month period prior to their filing of the Chapter 7 Petition. This amount of cash, which the Debtors claim they used for living expenses, expenses totally undocumented, is not insignificant in the total scheme of events, especially considering that during the same time period, the Debtors wrote checks for living expenses. During the fourteen months preceding the filing of the Petition in this case, the Debtors had at their disposal from the sale of the boat and vehicles, Mr. Sword's salary and withdrawals from their accounts the total of $91,384.00. Therefore, this Court is satisfied that the Debtors failed to carry their burden to furnish a satisfactory explanation of the loss of their assets. Therefore, based on § 727(a)(5) of the Bankruptcy Code, they are not entitled to discharge.

A separate Final Judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.